OPINION OF THE COURT
John R. LaCava, J.
Petitioners bring this Election Law article 16 proceeding and declaratory judgment action seeking, inter alia, an order invalidating the nominating petitions filed by respondent candidate Roberto Lopez with the Westchester County Board of Elections (Board) in the Independence Party primary for the office of City Council Member, 1st District, City of New Rochelle (City Council), scheduled for September 13, 2011. The proceeding was commenced by an order to show cause, dated July 27, 2011, contesting the signatures contained on the petitions gathered by Lopez.
Petitioner alleges, inter alia, that, pursuant to Election Law § 6-136 (2), petitions require signatures from at least 5% of the enrolled voters of the party in the district to be valid; that the Board determined that 13 signatures were required on petitions circulated for nomination as a candidate for the City Council for the Independence Party in New Rochelle City Council, 1st District, based on the calculation of enrolled voters in that party in the District on April 1, 2011; that petitioner made specific objections challenging 2 of the 14 signatures gathered by Lopez for nomination to said office, which objections were sustained by the Board; and that therefore fewer than 13 proper signatures (the 5% required) had been gathered by Lopez for nomination to the office.
Respondent’s answer asserts that based upon the recent redistricting of the City Council districts, the July enrollment *297 for Council District 1 generated a requirement of 8, not 13 signatures. Attached to the answer is a Board of Elections voter registration list (produced on July 28, 2011) which shows that there were 149 Independence Party members in the new Council District 1. Given that 12 signatures are uncontested, the Lopez nominating petition should be deemed valid. Lopez argues, inter alia, upon the hearing of this matter (set forth in greater detail below), that the Board decided in June 2011 that, despite the wholesale realignment of some districts in the county, including the District at issue herein, New Rochelle City Council, 1st District, the figures used would be the April 1, 2011 enrollment and not the enrollment in the District as changed by redistricting commencing in May of 2011; that the previous enrollment figure generated a 5% figure of 13, while use of the June enrollment (calculated in late May to early June 2011) generated a figure of eight; and that it was arbitrary and capricious for the Board to so decide.
The Hearing
The court conducted a hearing with regard to this Election Law article 16 matter on August 2, 5, and 8, 2011.
Based upon the credible evidence adduced at the hearing, the court makes the following findings of fact:
Petitioner called Westchester County Democratic Board of Elections Commissioner Reginald LaFayette, who testified that he received an e-mail on June 13, 2011 from the Republican Board of Elections Commissioner, Douglas Colety. Commissioner Colety inquired as to the number of signatures which would be required for circulating nominating petitions, in light of the redistricting being conducted in the County. Commissioner Colety forwarded with the e-mail the current party enrollment numbers for, inter alia, City Council District 1 in New Rochelle indicating a then current figure of 147 enrolled Independence Party members in that District. Commissioner LaFayette responded, about 10 minutes after receiving the e-mail, that the numbers to be used should be those figures, the numbers already established for that District on April 1, 2011. Just three minutes later, Commissioner Colety responded via e-mail that he agreed with Commissioner LaFayette.
Commissioner LaFayette explained that he was aware when he received the e-mail from Commissioner Colety that a determination needed to be made because petitions had been circulating for several days, and because redistricting was occurring in *298 several places in the county. He also believed that the April figures were appropriate since it was his understanding that the figures relating to the redistricting had not yet been analyzed and corrected by the Board. Commissioner LaFayette conceded that, approximately 10 years ago, redistricting had been involved in a decision to use the smaller of the April 1 and the actual numbers generated after April 1, but he stated that that was because the postredistricting numbers (from 10 years ago) were generated earlier than in 2011 and the Board was able to format the new districts earlier. For that reason, the Board allowed either set of numbers to be used without any penalty. While a discussion was conducted after the June 13, 2011 e-mail regarding whether to use later numbers as they had been used previously, it was agreed by the Commissioners and their staffs that they did not have numbers postredistricting that they believed were correct. He also indicated that there had been numerous requests to the City of New Rochelle for the final redistricting numbers.
Petitioner next called Commissioner Colety to testify. Commissioner Colety was unable to recall a meeting as described by Commissioner LaFayette, where it was discussed whether to use numbers generated later as they had been used 10 years ago.
Deputy Board Commissioner Jeannie Palazola testified that she had spoken to the Commissioners about the practice they employed 10 years earlier, but at that time the Commissioners did not share with her what they were going to do in 2011.
Board Administrator Philip Chonigman testified that he was aware of the redistricting taking place in Westchester County, and the City of New Rochelle in particular, in late April or early May of 2011. He recalls that on or about May 28, 2011 he had held aside a determination on New Rochelle City Council District 1 enrollment until additional numbers were available regarding the changes in the district boundary lines, and thus the identity of registered voters. According to Chonigman, it was not until three days after nominating petitions began to be circulated, namely, on June 10, 2011, that the Board was notified of the new district boundary lines. Although, in light of the City Council races, the Board’s work of determining which voters had been placed in the newly drawn districts was expedited, it was not until late June 2011 that this work was largely completed. However, even at the time of his testimony, he was unable to state on what date a final list of voters in the districts would be available.
*299 Commissioner Colety was recalled, and testified about the extensive work done to compare the “metes and bounds” descriptions of the new districts, as determined by the New Rochelle City Council, to the lists of voters now contained within those districts, in order to compile a list of the numbers of registered voters in the individual parties, and to determine 5% of this figure to establish the petition signature minimum. Commissioner Colety identified exhibit 2 in evidence, the list of required signatures for each district, as compiled by the Board on April 1, 2011; this list is available to the general public, both callers and for distribution, and is also posted on the Board’s Web site. For the Independence Party, for the race in New Rochelle City Council District 1, the number of signatures determined by the Board to represent 5% of the registered voters on April 1, 2011 is 13.
Commissioner Colety stated that an “Equivalency File,” consisting of some 1,200 census blocks in New Rochelle which can be assigned to the several council districts, was provided to the Board sometime in May 2011. However, it was his position then that the decision on what voter enrollments to use for the districts which had been redistricted had already been made on April 1, 2011. The only numbers then available, those of the prior year’s enrollment, were determined by the Board (which consisted of the two election commissioners) to be the operative numbers. As of the date of his testimony, according to Commissioner Colety, only about 95% of the redistricting analysis was actually completed. Commissioner Colety went on that petitioner’s No. 1, the e-mail exchange between Commissioners containing the attached updated figures, merely was his effort to remind the Board that, while the drawing of new district lines may have been completed, the allocation of voters to those districts was not, and that the decision as to the how to calculate the 5% of enrolled voters in the redistricted districts had already been made by using the only final numbers available, those on April 1, 2011.
Procedural issues
The court notes, as the Board asserts, that respondent-candidate Lopez failed to initiate any action to validate his nominating petitions in the instant proceeding, or to challenge the decision of the Board under CPLR article 78. In fact, Lopez only filed an affirmative defense asserting that the number of enrolled Independence Party voters in New Rochelle City *300 Council District 1 on July 15, 2011 was 149; that 5% of this number (rounded up) was 8; that the number of conceded proper signatures gathered by Lopez numbered 12; and that, therefore, his petition should be sustained as containing signatures (12) in excess of the 5% required (8). To the extent that Lopez seeks to challenge as arbitrary and capricious the Board’s determination that 13 signatures are required, such a challenge is normally brought pursuant to CPLR article 78 (see CPLR 7803 [3]; 7804 [d]). Since Lopez failed to commence a proceeding pursuant to that article, by filing of a verified petition, or by serving answering papers that contained such an allegation, he may not seek declaratory judgment relief under article 78 for any alleged arbitrary and capricious conduct by the Board.
Similarly, and again as the Board points out, Lopez failed to initiate an Election Law article 16 challenge to the Board’s determination. Such a proceeding would have been commenced by the filing of a notice of petition and a summons with verified petition and complaint. His failure to so initiate, or to again serve any answering papers that contained an allegation directed to the decision of the Board that 13 signatures are required, means that he also may not seek declaratory judgment relief under Election Law article 16 for these actions (see Matter of Wilson v Garfinkle, 5 AD3d 409 [2d Dept 2004]).
Finally, with regard to Lopez’s affirmative defense, he failed to place the Board on notice, by assertion of that defense, that he was challenging its determination that 13 Independence Party signatures were required to constitute a proper nominating petition in New Rochelle City Council District 1. The Board properly objects that it was subjected to assertion by Lopez of an affirmative defense without the ability to properly rebut that defense (cf. Shapolsky v Shapolsky, 22 AD2d 91 [1st Dept 1964]). Consequently for failure of respondent candidate Lopez to either initiate an article 78 proceeding to challenge the decision of the Board; or to properly initiate an Election Law article 16 proceeding to challenge that decision; or to properly plead an affirmative defense such that the Board could properly defend its decision, the court must deny any relief under CPLR article 78 for alleged arbitrary and capricious conduct by the Board and/or any relief under Election Law article 16 for the Board’s determination, and must similarly strike Lopez’s affirmative defense.
Substantive Issues
In any event, and even if the court were not obliged to deny the relief sought and strike respondent’s affirmative de *301 fenses as set forth above, the court finds that petitioner has established by a preponderance of the credible evidence and as a matter of substantive law that the nominating petitions, post challenge, are deficient in the number of signatures gathered and thus must be stricken. Petitioner, through the testimony of the Commissioners and the other Board employees showed that the Board followed the Election Law in calculating the number of signatures required in the petitions filed for the Independence Party primary in New Rochelle City Council District 1.
Election Law § 6-136 (2) provides “petitions must be signed by not less than five per centum, as determined by the preceding enrollment, of the then enrolled voters of the party residing within the political unit in which the office or position is to be voted for.”
As was customarily done each year, the Board, on or about April 1, 2011, published the list of enrolled voters for the electoral districts within the county, including New Rochelle City Council District 1 (see Election Law § 5-604 [1]; see also Matter of Andrews v Board of Elections of County of Albany, 164 AD2d 960 [3d Dept 1990] [holding that Election Law § 5-302 (5) provides that the Board is not obligated to supplement the list of enrolled voters until 15 days before the scheduled primary]). Based on that enrollment, the number of signatures required under Election Law § 6-136 was calculated to be 13. Subsequently, in mid-May 2011, the City of New Rochelle redistricted its City Council Districts, including District 1. However, by the date on which the collection of nominating petitions commenced, the Board still had not yet received the new district boundaries, from which it could calculate, if it so chose, the new enrollment numbers created as a result of the redistricting. The Board directly addressed the question of whether to recalculate — on June 13th, and upon consultation, determined that since the petitions were already circulating and signatures were already in the process of being collected, they could not properly consider altering the number of signatures to be gathered after collection had already commenced, and that they would use the numbers established on or about April 1, 2011. Indeed, even in early August, when the hearing was being conducted in the instant proceeding, it was the Board’s opinion that the data it possessed still would not enable it, with certainty, to calculate the exact number of enrolled voters, and thus the number of signatures finally required for the new District.
In Matter of Horwitz v Egan (264 AD2d 454 [2d Dept 1999], Iv denied 94 NY2d 751 [1999]), the County Board of Elections *302 compiled enrolled voters lists on several dates prior to and during the time when petition signatures were being gathered. In fact, the number of voters decreased during that time period such that the number of signatures decreased as well. The Court stated at page 455, in recognition of the potential effect of a decrease in the number of signatures required during the petition-gathering period, “to hold [that recognition could be taken during the petition process of enrollment changes] would require candidates to begin obtaining signatures on designating petitions without knowing how many signatures will be needed.” (See also Matter of Kent v Coveney, 96 AD2d 919 [2d Dept 1983]; Matter of Green v Voyticky, 185 AD2d 956 [2d Dept 1992] [enrollment tabulation of voters in a particular district left to Board of Elections].)
Consequently, here, although it is alleged that the number of signatures required before June 7, 2011 was greater (because of redistricting) than that required after that date, pursuant to Horwitz this court finds that the Board appropriately determined, and continued to adhere to the determination, that the number of signatures required was that derived from the number of enrolled voters in the preceding enrollment, namely, the number published on April 1, 2011.
Finally, even if the- court had not stricken respondent candidate’s affirmative defense, that pleading asserted that the number of signatures needed on July 15, 2011 was eight. Putting aside the irrelevance of what the number of signatures required was after the signature gathering period had closed, the proof adduced at the hearing on the petition did not firmly establish what that number was on that July date. Neither did the proof establish conclusively what that number was during the more crucial five-week period when signatures were being gathered. The uncontradicted evidence is that, while calculations by the Board led to a postredistricting assessment of the number of signatures required in New Rochelle City Council District 1, the Board had little or no confidence that that number was an accurate reflection of the enrolled number of voters in the District; indeed, even at the hearing the Board could only express confidence that the assessment was 95% complete. Hence, respondent candidate, even if put to his proof on his unpleaded affirmative defense, wholly failed to establish that during the petition-gathering period, the number of signatures required was only 8.
Based on the foregoing, it is hereby ordered, that the Election Law article 16 declaratory judgment proceeding by petitioner *303 seeking to invalidate the nominating petitions filed by respondent candidate Roberto Lopez with the Westchester County Board of Elections in the Independence Party primary, scheduled for September 13, 2011, for the office of City Council Member, 1st District, City of New Rochelle, and upholding the determinations by the Westchester County Board of Elections that the number of signatures required on the said petitions was 13, and that respondent candidate Roberto Lopez’s petitions contained only 12 proper signatures and thus the petitions are invalid, is hereby granted; and it is further ordered, that the Westchester County Board of Elections is hereby enjoined, restrained, and prohibited from executing or allowing the name of Roberto Lopez to be printed or placed on the official ballots to be used either at the September 13, 2011 Independence Party primary election or the November 8, 2011 general election for public office of City Council Member, 1st District, City of New Rochelle, on the Independence Party line.