THE PEOPLE OF THE STATE OF NEW YORK ex rel. FIFTH AVENUE & 37TH STREET CORPORATION, Appellant, Respondent, *v.* WILLIAM STANLEY MILLER and Others, as Tax Commissioners, Constituting the Tax Commission of the City of New York, Respondents, Appellants.

(Consolidated Proceedings.)

First Department, March 21, 1941.

*Robert J. Silberstein* of counsel [*Victor S. Gettner* with him on the brief; *Gettner, Simon & Asher*, attorneys], for the relator-appellant.

*Alfred T. White* of counsel [*Arthur A. Segall* and *Anthony Curreri* with him on the brief; *William C. Chanler, Corporation Counsel*], for the defendants-appellants.

DORE, J.  Relator appeals from a final order of Special Term entered after a trial in a consolidated certiorari proceeding to review tax assessments upon the relator's real estate 412 Fifth avenue, New York, for the first six months of 1939 and the fiscal year 1939–1940.  The order reduced the assessment for the first half of the year 1939 from $2,550,000 to $2,385,000 and quashed the writ for the fiscal year 1939–1940 solely on the ground the court lacked jurisdiction to entertain the proceeding as the application omitted the jurat and signature of the notary.  To avoid a retrial, however, the court wisely took testimony of value and determined the valuation for the fiscal year 1939–1940 to be $2,400,000.  The court also held it did not have power to permit an amendment.

The tax commissioners cross-appeal from the order in so far as it reduced the assessment for the first six months of 1939.

The learned Special Term in our opinion erred in quashing the writ for 1939–1940 as the proof established that the application was made in writing under oath as required by section 163 of the New York City Charter.  That section, so far as relevant, provides that the application for correction of assessment " shall be made in writing under oath and shall specify clearly the objection * * * and the grounds for such objection * * *."  The uncontradicted facts established at the trial showed that the application for that period, as well as that for the previous half year, was signed and sworn to before the same notary who inadvertently failed to fill out the jurat and sign her name on the 1939–1940 application.

The issue is whether such omission is so fatally defective as to deprive the court of any jurisdiction whatever.  If the defect is less than jurisdictional, the admitted facts show that the tax commission has waived the defect by receiving and acting upon the application and filing its return.  Thus the commission, without objecting to the form of the application, sent to the relator a

notice of hearing and the assessment was confirmed. The commission's return, filed pursuant to an order to show cause, raised no issue of any claimed jurisdictional defect, though it contained the usual *pro forma* reservations as to such defects. Defects that are not jurisdictional may be waived by proceeding to hear the case on the merits, and this rule applies to proceedings before the tax commissioners. (*People ex rel. Empire Mortgage Co.* v. *Cantor*, 190 App. Div. 512 [1st Dept.].)

The statute requires that the application be " in writing under oath." The application in question is in writing, signed by the applicant through its president Hyman Schroeder, and after setting forth the venue, states in writing, " Hyman Schroeder being duly sworn says " that the statements made in the application are true and asks that the assessed valuation be corrected. The form for the jurat is entirely blank and the notary failed to affix her signature thereto. At the trial, however, the relator's president who signed and swore to the application and the notary who took the oath both testified without contradiction that the application had been signed and sworn to by Hyman Schroeder in the presence of the notary public who took the oath but inadvertently failed to fill out the jurat.

On the facts disclosed in this record the defect is not a fatal jurisdictional defect depriving the court of all power to act. In our common practice of administering oaths, oaths are not in writing; they are made orally before the officer. The jurat is simply evidence of the fact that the oath was properly taken before a duly authorized officer. It is no part of the oath nor conclusive evidence of its due administration; it may be attacked and shown to be false. Most oaths have no jurat whatever; *e. g.*, the oaths of witnesses testifying orally before the court or other tribunal. Such oaths are of course valid, and the affiant may be subject to a prosecution for perjury irrespective of the absence of any jurat.

But it is urged that the statute requires that the application be " in writing under oath " and that this means the oath itself must be in writing. Obviously the Legislature did not intend to exclude the oral administration of oaths. Any oath administered orally, as is the usual custom, obviously would suffice if the written application showed that it was " under oath." This application does show in writing that it is under oath and the evidence establishes it was in fact duly sworn to before an authorized officer. The certificate, which is no part of the oath but additional evidence that the oath has been taken, was inadvertently omitted. That defect in the circumstances disclosed is not fatal.

The majority view of the courts in this country has been set forth in " American Jurisprudence," the recent rewriting of Ruling Case Law, as follows: " The courts are not entirely agreed as to the effect of the omission of a jurat or a signature thereto upon the affidavit. According to the majority view, such an omission is not fatal to the validity of the affidavit, so long as it appears, either from the rest of the instrument or from evidence aliunde, that the affidavit was, in fact, duly sworn to before an authorized officer. This rule is based upon the principle that a party should not suffer by reason of the inadvertent omission of the officer to perform his duty. Under this view, an affidavit defective by reason of the omission of the jurat of the officer's signature may, upon proof of its authenticity, be cured by amendment." (1 Am. Jur., Affidavits, § 19, citing cases from various jurisdictions in the United States.) (See, also, 1 A. L. R. 1571; 116 id. 589; and *Sage* v. *Stafford*, 42 App. Div. 449.)

In this court and in the Court of Appeals the precise issue apparently has not been passed upon. Recent decisions in the Court of Appeals in analogous cases would seem to indicate that the court should hold the defect is not jurisdictional but curable by amendment. In the recent case of *People ex rel. New York City Omnibus Corporation* v. *Miller* (282 N. Y. 5) the Court of Appeals, reversing this court (257 App. Div. 936), held that a petition for a writ of certiorari to review tax assessments may not be dismissed for want of jurisdiction on the ground that the president of the applicant had failed to sign the verification though it was duly signed by a notary public before whom the affidavit was taken; and assuming the verification defective, further held the defect was not jurisdictional but could be corrected on motion. The court distinguished *Ponsrok* v. *City of Yonkers* (254 N. Y. 91) which this court had felt constrained to follow in the *Omnibus* case, pointing out that the *Ponsrok* case referred to a claim filed against a city and was not an authority to be followed in connection with a petition for a writ to review a tax assessment. The *Ponsrok* case held that a verification not signed by the petitioner was defective and that where the Legislature prescribed a method for serving a notice of claim upon a city, only that method is sufficient. In the *New York City Omnibus* case the court cited with approval *People ex rel. Durham Realty Corp.* v. *Cantor* (234 N. Y. 507). There the petition was not verified by the owner of the property but by mistake was verified by a corporation. Adopting, however, the dissenting opinion of CLARKE, P. J., in this court (201 App. Div. 834), the Court of Appeals held in the *Durham Realty* case that " Under the liberal provisions of the statutes of this State in regard to practice,

the amendment should have been allowed." In the *New York City Omnibus* case the Court of Appeals also quoted with approval *People ex rel. Denney* v. *Clark* (257 App. Div. 905) which stated, " The Tax Law relating to review of assessments is remedial in character and should be liberally construed to the end that the taxpayer's right to have his assessment reviewed should not be defeated by a technicality."

In its opinion in the case at bar the learned Special Term stated it could see no distinction between a notice of claim against the city and a notice of application to review a tax valuation. While that may be the personal opinion of the learned trial justice, it can no longer be either his or this court's official judicial judgment after the distinction made between the two classes of cases by the Court of Appeals in the *New York City Omnibus* case (*supra*).

In *People ex rel. Schwarz* v. *Miller* (281 N. Y. 554) the Court of Appeals held that an unverified application for the correction of an assessment is sufficient despite the express provisions of section 27 of the Tax Law requiring that complaints in relation to assessments should be made under oath. It was held that the charter provision which then merely provided for an application in writing controls. A similar ruling was made in *People ex rel. 243 Corporation* v. *Miller* (284 N. Y. 150) where the application was not signed by the applicant and lacked the handwritten signature of the officer to the jurat.

And if there were any doubt that on the facts disclosed amendments may be made, it is removed by the provisions of section 105 of the Civil Practice Act, quoted by the Court of Appeals in the *New York City Omnibus* case (*supra*). That section provides that at any stage of an action a mistake or omission or defect may be corrected in the discretion of the court.

This case is clearly distinguishable from *People ex rel. 2440 Concourse, Inc.,* v. *Miller* (261 App. Div. 948), decided herewith. In that case the application totally failed to comply with the Charter provision to " specify clearly the objection  *  *  * and the grounds for such objection." The statutory requirement to specify the grounds was entirely disregarded and no grounds of objection whatever were set forth in the written application which was totally blank in that respect. In this case the application clearly states the grounds of objection, states in writing it was under oath, and was in fact under oath.

The law relating to the review of assessments is remedial, and unless we are compelled to do so, we should not defeat the taxpayer's right to review because of an inadvertent omission of a notary. The statute does not make the jurat mandatory. The face of

this written application and the evidence aliunde conclusively establish that it was in writing and under oath.

The assessment for the first half of 1939 was $2,550,000, and for that taxable period the court fixed the value of the land at $2,025,000 and the building at $360,000, a total $2,385,000. The assessment for the year 1939–1940 was $2,520,000, and for that taxable period the court fixed the value of the land at $2,025,000 and the building at $375,000, a total $2,400,000. There is no dispute as to the value of the building as fixed by the trial court although it was higher than the assessed building value. The city assessed the land for the first period at $2,300,000 and for the second period at $2,270,000, though the relator acquired title to the property in December, 1937, for the sum of $1,400,000 all cash. Relator's experts conceded, however, that the actual value at the taxable dates was $1,670,000. Considering all the evidence and applying all the relevant factors, we think that a valuation of the land in both years for any greater sum than $1,900,000 was unjustified. Accordingly, we think that the land valuation of $2,025,000, as fixed by the trial court for both years, should be reduced to $1,900,000, that the total valuation for the first half of 1939 should be reduced from $2,385,000 to $2,260,000, and that the total valuation for 1939–1940 should be reduced from $2,400,000 to $2,275,000.

The order appealed from should be modified in accordance with this opinion, and, as so modified, affirmed, with twenty dollars costs and disbursements to the relator.

TOWNLEY, COHN and CALLAHAN, JJ., concur; MARTIN, P. J., dissents and votes to affirm.

Order modified in accordance with opinion, and as so modified affirmed, with twenty dollars costs and disbursements to the relator.
Settle order on notice.