In the Matter of the Probate of the Will of CATHERINE F. MACK, Deceased. ELIZABETH HITT et al., Appellants, SARAH RICKERT et al., Respondents.

Third Department, May 27, 1964.

206

*John H. Mangan* for appellants.

*Deyo, Turnbull, Turner & Normile* (*Patrick D. Monserrate* of counsel), for Margaret McGuire and another, respondents.

*Coughlin, Dermody, Ingalls & Guy* (*George C. Coughlin* of counsel), for Sarah Rickert and another, respondents.

*Meagher, Eisenhart & Madigan* for Ann M. Bennett, respondent.

AULISI, J. This appeal is from a decree of the Surrogate's Court of Broome County, entered September 13, 1963, admitting to probate an instrument alleged to be the last will and testament of Catherine F. Mack, deceased.

The question before us is whether or not the will was revoked. The facts are not in dispute. All interested parties concede that the will was duly executed and attested as required by law and that the decedent was competent and free from restraint and undue influence.

Catherine F. Mack died June 13, 1961, leaving an instrument alleged to be her will dated May 25, 1955. The paper consisting of 4 pages had been prepared by her attorney who, with his secretary witnessed its execution. Each witness initialed pages 1 and 2. On page 3 following the testimonium clause the decedent's name was written in full and the initials of each witness were written opposite said clause. The attestation clause began near the bottom of page 3 and continued on page 4 where each of the witnesses signed their names and addresses in full. The instrument was taken by the decedent to her home. After much search the will was found on June 16, 1961, by the executrix and the assistant trust officer of the corporate coexecutor in an unlocked tin box under decedent's bed in an unsealed engraved will envelope bearing the printed address of the firm of attorneys who prepared it. The will was delivered to the attorney who had prepared it and he turned it over to his secretary for copying. After some 20 minutes had elapsed, the secretary noted that the portion of the attestation clause on page 4 which contained the full signatures and addresses of the witnesses had been torn off. The torn part has never been found.

With the exception of the missing part of page 4, the will is in excellent condition and the signature of the decedent is not

obliterated, scratched out or marked in any way. Similarly the initials of the witnesses give no evidence of tampering. The probate of the instrument which contains bequests for religious purposes, to friends and to certain members of her family who are also distributees is contested by the remaining distributees. They contend that the initials placed upon the will have no probative effect. We do not agree. Subdivision 4 of section 21 of the Decedent Estate Law provides as follows: '' There shall be at least two attesting witnesses, each of whom shall sign his name as a witness, at the end of the will, at the request of the testator.'' The witnesses here testified that their initials were signed as witnesses to the will at the decedent's request and after she had signed her name and declared the instrument to be her last will and testament. It is immaterial as to how a person may sign his name or what he adopts as his signature. Section 46 of the General Construction Law defines a '' signature '' as '' any memorandum, mark or sign, written, printed, stamped, photographed, engraved or otherwise placed upon any instrument or writing with intent to execute or authenticate such instrument or writing.'' Courts have adopted a liberal policy in construing subdivision 4 of section 21 of the Decedent Estate Law. Initials, and even a mark, are acceptable forms of signatures (*Jackson* v. *Jackson,* 39 N. Y. 153). The attestation clause is no part of a will and is not essential to its validity (*Younger* v. *Duffie,* 94 N. Y. 535). It is our opinion that the will was executed in accordance with the requirements of section 21 of the Decedent Estate Law and we see no reason to disturb the finding of the Surrogate.

We also believe that the Surrogate's conclusion that the will was not revoked by the testatrix should be upheld. There can be no revocation of a will except as prescribed by the statute (*Matter of McGill,* 229 N. Y. 405, 411). To revoke a will it is necessary not only that there should be an intent to revoke the will, but the intent must be consummated by some of the acts specified in the statute, or by the execution of an instrument declaring such revocation. To be effective it must be made pursuant to the statute (*Matter of Evans,* 113 App. Div. 373; *Matter of Parsons,* 119 Misc. 26, affd. 204 App. Div. 879, affd. 236 N. Y. 580). Section 34 of the Decedent Estate Law is plain. It sets forth how a will may be revoked: (1) By some other will in writing; (2) by some other writing of the testator declaring such revocation, executed with the same formalities with which the will itself is required by law to be executed; (3) burning; (4) tearing; (5) canceling; (6) obliterating, and (7) destroying, with intention and for the purpose

of revoking the same by the testator himself, or by another person in his presence by his direction and consent, and when done by another person the fact of such injury or destruction shall be proved by at least two witnesses. The burden of proof as to revocation rests upon the objectors. It is an affirmative act which, like any other positive act, must be proven by those who assert it (*Matter of Crouse,* 205 App. Div. 135, affd. 238 N. Y. 583).

Except for the testimony of Alice Sheehan, a sister-in-law of the testatrix, the objectors offered no proof to sustain their contention that there was a revocation of the will. Mrs. Sheehan was not a beneficiary under the will. Her husband who predeceased his sister had been bequeathed the sum of $2,000. She testified that on two occasions, five or six years prior to her death, Mrs. Mack stated that she had taken Mrs. Rickert out of the will. These statements were of little help to the contestants as they were not connected by the witness to the alleged tearing. They fall far short of meeting the requisite proof of intent to revoke the whole will. It is also obvious from her testimony that Mrs. Sheehan had words with the decedent. The only declarations of a testator that are admissible for the purpose of showing a revocation of his will are those that accompany the act by which the will is destroyed or invalidated. Mere words will, in no case, amount to revocation. They must be a part of the *res gestæ.* They are then admitted for the purpose of showing the intent accompanying the act (*Waterman* v. *Whitney,* 11 N. Y. 157; *Eighmy* v. *People,* 79 N. Y. 546).

During the years that followed the execution of the will the decedent had several occasions to consult her attorney on other matters. She never mentioned to him any change of plans. There is no proof that the decedent tore page 4 or that she intended by such act to revoke her will. The will had passed through the hands of at least four people before it was discovered that a portion of it was missing. The presumption of revocation cannot arise on the proof we have here.

The decree should be affirmed.

GIBSON, P. J., HERLIHY, REYNOLDS and HAMM, JJ., concur.

Decree affirmed, with costs to each party filing brief payable from the estate.