THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* JOHN LO PINTO, Respondent.

Third Department, December 30, 1966.

*Richard B. Thaler, District Attorney* (*Richard I. Mulvey* and *Robert J. Clune* with him on the brief), for appellant.

*Paul R. Shanahan* and *Bruce G. Dean* for respondent.

STALEY, JR., J. This is an appeal from a judgment of the County Court of Tompkins County entered on the 29th day of April, 1966, which dismissed the indictment in its entirety against the respondent on demurrer.

Respondent was indicted and charged with violations of the Penal Law as follows: (1) subdivisions 2 and 3 of the first part of section 889 (two counts of forgery, third degree, a felony); (2) section 781-b (printing or other reproductions of certain political literature, a misdemeanor); and (3) section 783 (crimes against the elective franchise not otherwise provided for, specifically for failure to comply with subdivision 2 of section 322 of the Election Law, a misdemeanor).

Upon receipt of a bill of particulars furnished pursuant to court order, the defendant demurred to the indictment, and to each of its four counts on the grounds (1) that the said count does not contain a plain, concise statement of the act constituting the crime alleged in the said count, as required by sections 275 and 276 of the Code of Criminal Procedure, and (2) that the facts alleged do not constitute a crime. The County Court sustained the demurrer as to all counts of the indictment on the ground that the alleged acts did not constitute a crime.

Attached to the bill of particulars is a photostatic copy of a postal card addressed to the *Ithaca Journal-News, Inc.* on one side, and on the other side is printed a straw ballot for the offices of Mayor, City Judge, Alderman, Supervisor and a referendum on the issue of fluoridation.

The indictment as to the first count charged the defendant with the crime of forgery in the third degree as follows: " with intent to injure or defraud, caused to be printed, counterfeited and forged, and aided and connived at the counterfeiting and forging of a certain written communication, paper or instrument, to wit, a United States postal card, being a copy of the authentic postal card which was the property of the Ithaca Journal-News, Inc., by which making, altering, forging and counterfeiting, the persons named on said postal card, and the Ithaca Journal-News, Inc., were injured in their good name, standing, position and general reputation."

The respondent contends that the duplication by the printing of the postal cards is not the subject of criminal forgery, in that they lacked a signature; they were incapable of producing the injury mentioned in the statute; and, this is not the type of activity intended to be punished under our traditional concepts of forgery. Appellant contends that a signature was not necessary; the indictment is sufficient since it is phrased in statutory langauge; and, the requisite injury may be proved on trial.

Subdivisions 2 and 3 of section 889 of the Penal Law provide as follows:

" Forgery in third degree.

" A person who: *   *   *

" 2. With intent to injure or defraud, shall falsely make, alter, forge or counterfeit, or shall cause, aid, abet, assist or otherwise connive at, or be a party to the making, altering, forging or counterfeiting, of any letter, telegram, or other written communication, paper or instrument by which making, altering, forging or counterfeiting, any other person shall be in any manner injured in his good name, standing position or general reputation; or,

" 3. Shall alter or shall cause, aid, abet, or otherwise connive at, or be a party to the uttering of any letter, telegram, report or other written communication, paper or instrument purporting to have been written or signed by another person, or any paper purporting to be a copy of any such paper or writing where no original existed, which said letter, telegram, report or other written communication, paper or instrument, or paper purporting to be a copy thereof, as aforesaid, the person uttering the same shall know to be false, forged or counterfeited, and by the uttering of which the sentiments, opinions, conduct, character, prospects, interests or rights of such other person shall be misrepresented or otherwise injuriously affected ".

The first question to be considered is whether printing a copy of the postal card constituted counterfeiting or forging a writing or communication within the meaning of subdivision 2 of section 889 of the Penal Law. The mere copying of the printed ballot on a return postal card did not constitute forgery. The only place the name of the newspaper appeared was on the address side of the postal card. There is no allegation in the indictment that the postal card was copyrighted. When it was mailed or circulated by the newspaper, it was no longer the exclusive property of the newspaper and was exposed to duplication by anyone who came into contact with it.

The sole issue involved here is whether the act of expressing a choice by encircling names and words on the copied postal card could be considered counterfeiting or forging an instrument, communication, writing or document, and whether mailing it could be considered as uttering a forged instrument within the meaning of subdivision 3 of section 889 of the Penal Law.

The circling of the material on the ballot cannot be considered as the signature of another because no signature or identification was ever intended by either the newspaper on the original straw ballot or by the defendant on the copied facsimile. Intention is a necessary requisite of a signature. (Penal Law, § 3, subd. 7; General Construction Law, § 46; *Mesibov, Glinert & Levy* v. *Cohen Bros. Mfg. Co.*, 245 N. Y. 305, 310; *Pearlberg* v. *Levisohn*, 112 Misc. 95, 98–99.)

It cannot be said from the facts alleged in the indictment and bill of particulars that the defendant, in marking and mailing the ballot, was expressing the opinion of anyone but himself; certainly it cannot be assumed that there was any intention on the part of the defendant to forge or counterfeit the communication of any other particular person. The most that can be said is that he voted when he was not entitled to vote and this would be true if he voted once or 50 times.

The postal cards here in question bore no written signature thereto, nor any signature or writing purporting to be a signature of anyone, or intended to bind anyone. Being unexecuted writings, no criminal responsibility under the forgery statutes attaches to their unauthorized duplication. There was, therefore, no violation of section 889 charged in the first two counts of the indictment.

We are well aware of the present popular use of public opinion polls for business purposes and in political elections. However, in the absence of any statute, making a forgery of the unauthorized duplication and use of straw ballots by one other than the original poll taker, the present provisions of the Penal Law do not constitute such acts as criminal.

In the case of *People* v. *Clurman* (290 N. Y. 242, 246), the court stated as follows: '' It is no answer to all this to assert that article 84 of the Penal Law dubs so many different acts ' forgeries ' that it covers every kind of false instrument, the falsity of which has the effect of defrauding those who act upon it as genuine, or that the essential elements of the crime of forgery are the same under the statutes as at common law. It is still our duty to give effect to the declaration of section 22 of the Penal Law that in this State no act or omission shall be deemed criminal or punishable except as prescribed by statute.''

The third count of the indictment accuses the respondent of violating section 781-b of the Penal Law in that he did order to be printed, published, and reproduced a certain postal card, containing statements and information or other material concerning candidates and propositions involved in the Municipal Election of November 2, 1965, without having printed thereon his name and/or the name of the printer as required by the statute. While the postal card does invite an opinion, or at least an indication of choice between candidates, it supports no one, derogates against no one, makes no accusations, refers to no accomplishments, and champions no cause. This can hardly be termed political literature within the meaning of section 781-b of the Penal Law.

The fourth count of the indictment accuses the defendant of failing to file an affidavit concerning his expenditures in violation of subdivision 2 of section 322 of the Election Law. The expenditures referred to, in count four, concern the cost of printing the duplicate postal cards. This is not disputed by the appellant. In view of our holding that such postal cards do not constitute political literature, the expenditures for printing the cards cannot be held to be expenditures within the meaning of the statute.

In view of our conclusions expressed above we do not pass upon the first ground of the demurrer concerning the form of the indictment, nor upon the constitutionality of section 781-b of the Penal Law.

The judgment should be affirmed.

GIBSON, P. J. (concurring in result). Concurring in the result at which the majority arrives with respect to each of the four counts of the indictment, I write with particular reference to the second or uttering count, first, to outline the narrower ground of my conclusion and, second, to indicate my belief that in a proper case a charge of third degree forgery under the uttering subdivision (Penal Law, § 889, subd. 3) may, if correctly pleaded, be based upon willful counterfeiting, tampering and misrepresentation in connection with a poll designed to sample public opinion; if not in the political and electoral area, then certainly at least in the commercial field; and I would not wish our affirmance of the indictment's dismissal in this case to be taken as precedent to the contrary.

It is common knowledge, of course, that serious and supposedly scientific surveys of this nature have become an accepted means of ascertaining consumer preferences, as an aid to profitable merchandising, to mention but one example; and I am unable

to adopt respondent's view that our forgery statute is so antiquated and so inflexible as to afford no protection against fraudulent and damaging interference with such procedures. Whether those statutes may also be invoked in cases of counterfeiting and deception designed to influence, or at least to predict political action is a question which should await a case more clearly demonstrated and pleaded than is that now before us.

The "false, forged or counterfeited" paper in issue is disclosed by bill of particulars to have been a return postcard addressed to the newspaper named in the indictment, with cancelled stamp and postmark indicating that it was in fact mailed to the newspaper. Upon the card were printed the names of opposing candidates for certain city offices, certain of the names being circled with pen or pencil (later, it may legitimately be assumed); and there was also printed upon the card the following:

"FLUORIDATION

"Favor Fluoridation          Oppose Fluoridation"
the words "Oppose Fluoridation" being circled with pen or pencil.

Reducing the second count of the indictment to its simplest and basic skeletal form, it may be read to charge defendant with "the uttering of a written communication [or] paper  *  *  * purporting to be the authentic Ithaca Journal-News, Inc. poll return postal card sent out by the said Ithaca Journal-News, Inc. newspaper  *  *  *  knowing the same to be false, forged or counterfeited, and by which  *  *  *  uttering  *  *  * [the] opinions  *  *  *  of other persons were misrepresented".

The charge in this count follows, but only in part, the language of subdivision 3 of section 889 of the Penal Law, which, when extracted and condensed, for purposes of comparison with the second count, in pertinent part defines forgery in the third degree as "the uttering of any  *  *  *  written communication [or] paper  *  *  *  purporting to have been written or signed by another person [the utterer knowing the same] to be false, forged or counterfeited, and by the uttering of which the  *  *  *  opinions  *  *  *  of such other person shall be misrepresented".

It may well be that forgery may be constituted by the uttering of a "paper" in the form of a straw ballot "purporting to have been written", i.e., marked, by "another person" or persons, in this case by members of the public whose opinions were sought, but actually marked by a person with intent to misrepresent

such opinions or to indicate expressions of opinion when, in fact, no opinions were canvassed or expressed. In this case, however, these were not the acts charged. Rather, the forgery alleged in the second count was that of the " authentic  *  *  * return postal card " and not of the marking thereof; and thus the particular act charged did not misrepresent any opinion, although subdivision 3 would apply, if at all, to an uttering which should misrepresent the opinion of the person whose writing or ballot marking was forged and not that of the printer of the bogus ballot itself.

I do not agree with the view that only a " written instrument " within the statutory definition can be the subject of an uttering under subdivision 3 nor do I agree that subdivision 3 contemplates only a signed instrument. As has been noted, subdivision 3 includes such terms as a " written communication " or " paper ", purportedly " written *or* signed " (emphasis supplied) by another. Neither do I find warranted the respondent's reliance on *People* v. *Sansanese* (17 N Y 2d 302) relating in part to the more serious crime of forgery in the second degree, which is concerned with more solemn documents; the indictment in that case charging, in addition, the felonious procuring of a forged *instrument* to be filed or recorded in a public office.

I concur in the result, however, and consequently vote to affirm.

HERLIHY and BRINK, JJ., concur with STALEY, JR., J.; GIBSON, P. J., concurs in result, in opinion, in which REYNOLDS, J., concurs.

Judgment affirmed.