OPINION OF THE COURT
Paul I. Marx, J.
In this Election Law proceeding, petitioners, Cheryl L. Teets and Peter Tomasi, the candidates of the Democratic and Working Families Parties for the two City Council seats in the Second Ward of the City of Port Jervis, NY, seek an order directing the respondent Orange County Board of Elections to count two absentee ballots cast, but not yet counted, in the general election held on November 5, 2013. Respondents George A. Belcher and Robert C. Ritchie are the candidates of the Republican, Conservative and Independence Parties for that office. The Orange County Board of Elections (the Board of Elections) is the governmental entity charged with the responsibility of overseeing, canvassing and tallying votes within the County of Orange.
Procedural Background
This proceeding was commenced on November 21, 2013 when counsel for Teets and Tomasi presented an order to show cause to me for signature. The order to show cause sought various relief, including: (a) an order declaring insufficient, defective and invalid those ballots to which petitioners objected; (b) an order declaring certain ballots previously ruled invalid by the Board of Elections to be valid; (c) an injunction restraining the Board of Elections from casting and counting those ballots objected to by petitioners; (d) an order directing the Board of Elections to cast and count those ballots ruled by it to be invalid; and (e) an order declaring Teets and Tomasi to be the winners and elected in the race for councilman for the Second Ward in the City of Port Jervis. Since the proposed order to show cause included an application for injunction, in accordance with 22 NYCRR 202.7 (f), petitioners’ counsel was directed to give notice to respondents’ counsel of the application and the matter was scheduled for the next morning for consideration.
*515 On November 22, 2013, counsel for all parties appeared and an expedited schedule for service of pleadings and completion of discovery was set. In addition, in order to ensure that this court’s decision could be rendered prior to the final day for result certification, November 30, 2013, a hearing was scheduled for November 26, 2013. Finally, counsel for the Board of Elections was directed to provide copies of all relevant materials to all counsel upon request. All counsel were directed to file their submissions with the court simultaneously with service on their adversaries. As is befitting their professionalism, all counsel complied with the court’s directives and on November 26, 2013, a hearing was held on the petition.
At the hearing, the relevant documents were admitted into evidence: exhibit A is the unopened envelope in which an uncast ballot remains pending this decision; exhibit B is the absentee ballot on which it is alleged an erasure was made; exhibit C is the voter registration form for voter M.D.[1] and exhibit D is the absentee ballot application for M.D.
Because petitioners did not present any evidence with respect to any ballots to which they objected, the relief sought in items (a) and (c) is deemed to have been abandoned and will not be addressed further in this decision and order. Hence, this decision and order will address only those portions of the order to show cause which seek to have this court declare valid the two ballots which were, in the one case, declared invalid due to an erasure mark on the ballot and, in the other case, declared invalid because the Board of Elections determined that the signature on the envelope in which it arrived did not match that on the voter registration form. The ultimate determination as to which candidates prevailed in the election must abide the outcome of the review of the ballot(s) as provided for herein.
Facts
The race for the second of two positions of councilman in the Second Ward of the City of Port Jervis is a close one.
After all ballots from the general election were counted, Ritchie led with 262 votes, Belcher held second place with 250 votes, Teets was running a very close third with 249 votes and Tomasi trailed with 233 votes. Since there are only two ballots at issue here, Ritchie is safely ahead and Tomasi is out of the running. Thus, neither will be affected by this proceeding. *516 However, depending on which candidate the voters cast his/her challenged ballot for, the two votes in question here could determine the outcome for Teets and Belcher. Indeed, depending on this court’s determination as to whether these votes should be counted, and who they were cast for, the possibility exists for either Teets or Belcher to prevail or for a tie to occur.
Authority to Review the Board of Elections’ Determinations
That this court has authority to review the Board of Elections’ determinations cannot be seriously challenged for Election Law § 16-106 provides courts with authority to review a “board’s decision to canvass or refuse to canvass a particular ballot during the canvass.” (Matter of Gross v Albany County Bd. of Elections, 3 NY3d 251, 257 [2004].) Hence, this proceeding is properly before me for determination. Indeed, there has been no challenge to that authority.
The Standard of Review
Respondent candidates assert that the Board of Elections’ determination must be affirmed because it was neither arbitrary nor capricious. I reject this argument as it suggests a standard of review which is inapplicable.
Courts are called upon to examine issues using an “arbitrary and capricious” standard when deciding proceedings brought under article 78 of the CPLR, not when deciding issues under the Election Law. (Matter of Rossetti v Lopez, 33 Misc 3d 295, 299-300 [Sup Ct, Westchester County 2011].)
The First Ballot
I turn my attention first to the ballot which was declared to be invalid based on a “stray mark,” described as an erasure which appears in the column entitled “Councilman — 2nd Ward.” The mark appears in the oval for Ritchie as the Republican candidate for that office. The mark may represent an erasure or a smudge, but looks to this court to be an erasure and, as the finder of fact, I hold it to be such. In addition to the erasure mark, the voter completely filled in the ovals to vote for candidates Teets and Tomasi. As noted above, this ballot was admitted into evidence as exhibit B.
Petitioners argue that the absentee ballot should be counted because: (a) the mark is not significant, or (b) if held to be significant, should invalidate only the column in which it appears, or (c) should be disregarded because the instructions to the voter which appear on the bottom of the absentee ballot are in *517 consistent and incorrect. Respondent candidates oppose the counting of the ballot because, they argue, under Election Law § 9-112, the presence of an erasure mark voids the ballot, at least as to the office for which the erasure appears. These arguments will be addressed seriatim.
The Significance of the Mark
Petitioners argue that the mark on exhibit B is so faint as to render it meaningless, contending that it does not even appear on a photocopy of the ballot. That argument is unavailing. The mark on the original ballot is clearly and distinctively an erasure mark. As such, the court must address whether, as respondents contend, Election Law § 9-112 requires the ballot to be disqualified and disregarded.
Election Law § 9-112 (1) provides, in pertinent part:
“The whole ballot is void if the voter (a) does any act extrinsic to the ballot such as enclosing any paper or other article in the folded ballot or (b) defaces or tears the ballot. . . (c) makes any erasure thereon or (d) makes any mark thereon other than a cross X mark or a check V mark in a voting square, or filling in the voting square, or (e) writes, other than in the space provided, a name for the purpose of voting; except that an erasure or a mark other than a valid mark made in a voting square shall not make the ballot void, but shall render it blank as to the office, party position or ballot proposal in connection with which it is made.” (Emphasis added.)
The Election Law can scarcely be described as a model of clarity. This section is no exception. On the one hand, under paragraph (c) it appears that any erasure on a ballot voids the ballot in its entirety. On the other hand, under the exception to paragraph (e), it appears that the ballot is voided only as to the office for which the voting square applies. Since the erasure appears in the column for the office contested here, I need only address whether the erasure voids the ballot for that position.
This court previously held that where there is a stray mark on a ballot, the ballot is voided only as to that office. (See Smith v Sullivan, 38 Misc 3d 727 [Sup Ct, Orange County 2012].) That holding, which also applies to erasures which appear on ballots, is consistent with established precedent. (See Matter of Mondello v Nassau County Bd. of Elections, 6 AD3d 18 [2d Dept 2004]; see also Matter of Brilliant v Gamache, 25 AD3d 605 [2d Dept 2006].)
*518 This being the case, the erasure in this column mandates that this ballot not be counted. As such, the petition is denied with respect to this ballot. It shall not be considered in determining the outcome of the race for Second Ward councilman in the City of Port Jervis.
Voiding as to the Column Only
As noted above, petitioners’ counsel argues that if the court finds that the erasure is significant enough to warrant voiding the ballot, the ballot should be voided only as to the column in which the erasure appears. Obviously, counsel’s creative fall back position is an attempt to garner the vote cast for Teets whose name appears in the adjoining column of the now disqualified ballot at the expense of the vote for Tomasi, whose name appears in the same column as the erasure. Clearly, counsel wishes to save the vote cast for Teets which might turn the tide for Teets or, perhaps, force a tie in the subject contest while the vote for Tomasi is of no significance given how far behind he trails.
The cases cited above clearly hold that where there is a stray mark or erasure the ballot is voided as to that office. Thus, any attempt to restrict the nullification to a single column is not supported by law. However, petitioners’ counsel makes some interesting points with respect to the instructions on absentee ballots such as this one that must be addressed by the court and, as noted herein, by the State Board of Elections as well.
Inconsistent, Vague and Incorrect Instructions
Petitioners’ counsel adroitly points out that the instructions on the absentee ballots produced by the State Board of Elections for the 2013 general election are inconsistent, vague and incorrect with respect to the effect of an erasure and/or correction. That this is the case is apparent from a review of the instructions themselves.
On exhibit B, the absentee ballot which has now been negated by this court, the following language appears at instructions numbered 5 and 7, respectively.
“(5) Any other mark or writing, or any erasure made on this ballot outside of the voting oval or ‘write-in’ box provided for voting will void this entire ballot. . . .
“(7) If you tear, or deface, or wrongly mark this ballot, contact the Board of Elections at [phone number and email address omitted] for instructions on how to obtain a new ballot. Do not attempt to correct *519 mistakes on the ballot by making erasures or cross outs. Erasures or cross outs may invalidate all or part of your ballot. Prior to submitting your ballot, if you make a mistake in completing the ballot or wish to change your ballot choices, you may obtain a new ballot. You have the right to a replacement ballot upon the return of the original ballot.” (Emphasis added.)
Thus, instruction 5 advises the voter that the entirety of the ballot will be voided in case of an erasure, while instruction 7 advises the voter that an erasure or cross out may invalidate all or part of the ballot. In reality, under the Election Law and established precedent, as set forth above, neither statement is wholly correct. Indeed, instruction 5 leaves open the possibility that an erasure within a voting oval is acceptable. While I can appreciate that the intent of the State Board of Elections might be to convey the gravity of the ramifications that stray marks or erasures may cause, the instructions, as written, are incorrect. The result of that error in this case is to disenfranchise the voter. Had the instructions been more clearly written, perhaps the voter, upon realizing that an erasure would void his/her vote, would have asked for a new ballot. That is speculation, however. Nevertheless, it is obvious that the instructions require review and editing to comport with the law and to ensure internal consistency.
As such, as more fully set forth below, counsel for the Orange County Board of Elections is hereby directed to forward a copy of this decision and order to the State Board of Elections for further action to be taken by it to ensure that the instructions set forth on absentee ballots are consistent not only with prevailing law, but internally as well.
The Second Ballot
The second ballot which petitioners seek to have counted is contained within a sealed envelope currently in the possession of this court. The sealed envelope (with uncounted ballot inside) was admitted into evidence as exhibit A.
This ballot was disallowed by the Board of Elections because the Board determined that the signature that appears on the envelope of the absentee ballot did not match that of the voter’s absentee ballot application (exhibit D) and/or voter registration form (exhibit C). In fact, the voter, M.D., testified at the hearing that after he completed the absentee ballot and placed it in the *520 envelope, he initialed the line provided for “(Signature or mark of voter).”
Petitioners submit that the envelope should be opened and the ballot counted because the voter testified at the hearing that he often uses his initials in place of his full given name and that it was his intent to cast his vote by doing so here. Respondent candidates submit that the disallowance of the ballot by the Board of Elections should be upheld because (a) the use of initials by the voter is not the same as the signature he used when registering to vote or when applying for his absentee ballot, and (b) the decision by the Board of Elections was not arbitrary or capricious. This latter argument has been disposed of above.
The Requirement of a Signature
Election Law § 8-410, which authorizes the use of absentee ballots, requires that a voter “subscribe the oath on the envelope” before returning the absentee ballot. The requisite oath is prescribed by Election Law § 7-122 (8). It requires that the “statement of absentee voter” which appears on the envelope provided by the Board of Elections with the absentee ballot must include a line for “Signature or mark of voter.”
By disallowing the ballot in question here, it appears that the Board of Elections determined that the ballot failed to comply with section 8-410. That determination is incorrect. Thus, for the reasons set forth, I hold that the voter’s “signature” by initials as endorsed by him on the envelope satisfies the requirements of the Election Law and, as such, the subject ballot shall be opened and counted.
The Instructions on the Ballot Envelope
First, I note that, again, the instructions from the State Board of Elections which are set forth on the envelope for absentee ballots warrant review and modification to make them clearer and more readily understandable by the voting public, particularly if boards of elections interpret the word “signature” as the respondent County Board of Elections has in this case — the full legal signature of the voter. So far as relevant to the issue of the correctness of a voter’s signature on the envelope, the instructions set forth on the envelope provide: “After marking ballots, fold and enclose them in this envelope, and seal it. Sign and fill out [the] statement below.”
Additional instructions to the voter concerning when the ballot should be mailed so as to ensure timely receipt by the Board *521 of Elections and the requisite “statement of absentee voter” by which the voter confirms his/her qualifications to vote (citizenship, registered voter, inability to appear personally on election day, absence of intention to vote elsewhere or a prior vote in the subject election, and absence of impediment to voting) appear next. Finally, four blank lines appear on the envelope. These four lines are labeled as follows:
On the lower left-hand corner, there is a line preceded by the word “Date.” In the center of the envelope there is a line with the words “Signature of witness to mark” in parentheses and under that line is a line which has the words “Address of witness to mark” also in parentheses. On the lower right-hand corner is a line with a bold “X” next to it. Under that line are the words “Signature or mark of voter,” also in parentheses. This last line complies with the requirements of the Election Law but, nevertheless, creates questions about what constitutes a signature or mark for these purposes.
The Voter’s Mark
At the outset of the hearing, the court inquired of counsel what the term “mark” as used on the envelope meant and whether the initials used by the voter were sufficient to serve as his mark. Counsel were unable to state definitively whether a person’s initials can comprise his/her “mark” in this context.
Be that as it may, this court has been unable to find a definition of the term “mark” in the Election Law, General Obligations Law or General Construction Law. However, the term has been defined as “[a] character, usually in the form of a cross, made as a substitute for his signature by a person who cannot write, in executing a conveyance, will or other legal document.” (Black’s Law Dictionary [5th ed abridged].) Given that the voter, M.D., is able to write, use of a mark in this case would be inapplicable.
Furthermore, as respondent candidates’ counsel points out, if the initials are a “mark,” then they must be witnessed to be valid. The lines for the name and address of a witness to the mark are blank. Thus, it appears that the voter’s initials cannot be viewed as his “mark” for these purposes. Even if they did, in the absence of a witness’ name and address, the ballot could not be counted.
The Voter’s Signature
The next inquiry must be to whether the initials placed by M.D. may reasonably be construed as the voter’s signature in *522 the context of this proceeding. For the reasons set forth, I hold that in the circumstances presented here, the voter’s initials as augmented by his testimony as to his intent are sufficient to constitute a signature as required by Election Law § 8-410 and, therefore, the vote shall be cast and counted.
General Construction Law § 46 defines the term “signature” to be “any memorandum, mark or sign, written, printed, stamped, photographed, engraved or otherwise placed upon any instrument or writing with intent to execute or authenticate such instrument or writing.” Hence, the appropriate inquiry is not solely to whether the voter signed his name in full as respondents’ counsel suggests, but rather whether the voter made a “memorandum, mark or sign, written ... or otherwise placed . . . with intent to execute or authenticate.”
M.D. testified that after completing the ballot and placing it into the envelope, he placed his initials “M.ED.” on the line labeled “Signature or mark of voter” and then circled his initials. The question at hand is whether these initials are sufficient to constitute a signature and to warrant opening the ballot and counting the vote. In this regard, it must be noted that the voter testified that he frequently uses his initials in place of his full legal name and that it was his intent to cast his vote by mailing the ballot to the Board of Elections.
I am aware that various cases have held that where signatures on absentee ballots do not match those on registration documents, the ballots should not be counted. (See e.g. Matter of Johnson v Martins, 79 AD3d 913 [2d Dept 2010].) However, it does not appear that in Johnson the prospective voters testified at the Election Law hearing. Therefore, there was no inquiry into the voters’ intent. Indeed, the decision in that case is silent as to any testimony whatsoever having been heard by the court. Thus, the court’s decision was rendered solely on its evaluation and comparison of the absentee ballots in question with the registration forms. No testimony as to any voter’s intention was adduced or before the court. In my view, this is an important distinguishing fact, for here, I have heard, without objection, and found credible, the testimony of M.D. as to his intent to cast his ballot and as to his use of his initials in lieu of a full signature. This, in my mind, is determinative on the issue of whether M.D. accepted the oath on the envelope as required by Election Law § 8-410. Furthermore, it has been held that initials are an acceptable form of signature. (Matter of Mack, 21 AD2d 205, 207 [3d Dept 1964].)
*523 Interestingly, support for my holding is found in the very case relied on by respondent candidates’ counsel, Matter of Lynn v DeWitt (19 Misc 3d 1118[A], 2008 NY Slip Op 50764[U] [Sup Ct, Tompkins County 2008]). First, it is important to note that the Lynn court described the mark which purported to be the voter’s signature on the envelope as a “circular scrawl, centered on the signature line almost directly over the word ‘signature’. The mark curves upward, with a loop.” (Id. at *2.) This “mark” is dramatically different from the initials M.D. used as an alternative method of signing his name to the envelope, a method which he testified he frequently uses. Next, unlike the case at bar, in Lynn, the court noted that the Board of Elections of Tompkins County found that in prior elections the subject voter had cast his/her ballot using a “clear signature,” which had no “correspondence” with the scrawl, causing petitioner’s counsel to suggest that the court make further inquiry of the voter (a request the court denied).
Here, that inquiry came when petitioners’ counsel called M.D. to testify. Thus, there is no opportunity for foul play to have occurred. Finally, and compelling my conclusion, the Lynn court noted that in interpreting General Construction Law § 46, “the Third Department has held that ‘[i]ntention is a necessary requisite of a signature.’ ” (Id., citing People v Lo Pinto, 27 AD2d 63, 66 [3d Dept 1966].) “Whether such an intention may be inferred from a particular signature or mark may be a question of law or a question of fact, depending on the circumstances.” (Id. [citation omitted].)
In my view, requiring a full signature as a condition precedent to counting an absentee ballot where there is no instruction or cautionary language to that effect amounts to elevating form over substance. This is particularly true in this case where I have had the opportunity to assess the voter’s credibility as to his intent and where there is no suggestion that the ballot has been altered or manipulated and no one has alleged any nefarious activity involving this voter. Moreover, given the absence of any instruction on the envelope that the signature on the envelope must be the same signature on the absentee ballot application or voter registration form, the voter’s initials are sufficient. Here too, it must be noted that the instructions from the State Board of Elections are deficient.
Conspicuous by its absence on the envelope is any instruction to the voter that the signature affixed must be the voter’s full name. Equally absent is any instruction that indicates that the *524 signature must be the same as used when enrolling to vote or when applying for the absentee ballot. Since the law favors allowing voters to cast their ballots and disfavors technical objections that prevent them from doing so, this court will, in the exercise of discretion, and in light of all of the facts here, allow the voter’s wishes to be heard.
The Court of Appeals held in Matter of Gross, that
“[t]he right of the voter to be safeguarded against disenfranchisement and to have his intent implemented wherever reasonably possible . . . transcends technical errors .... There is no question that the object of election laws is to secure the rights of duly qualified electors, not to frustrate them by posing technical obstructions that bear no relationship to the policies underlying the statutes.” (Gross at 258 [internal quotation marks omitted].)
I decline to disenfranchise M.D. because he opted to use his initials rather than his full signature where the instructions on the absentee ballot envelope failed to apprise him that using any signature other than the one he registered with might cause his ballot to be invalidated and, more importantly, since his initials can, and do, comprise a legally permissible signature for these purposes.
I am not blind to the fact that a person who appears to vote at a polling place is usually asked by a poll worker to sign his/ her full name so that the poll worker can verify that signature against one that is on file. Unfortunately, the current procedure for confirming the signatures on absentee ballots omits that step; no one is there to instruct a voter how to complete the envelope to be certain that his/her vote will be counted. Thus, the need for explicit, unambiguous instructions on such form. If it were the intention of the Boards of Elections (State and local), to require the voter to sign his/her full legal name as signed on the voter registration form or absentee ballot application, it was a simple thing for it to state on the envelope. An instruction such as “Your signature must match your signature on file. Use of any other signature, initials, or marks will result in the dis-allowance of your vote” would provide clear, unambiguous guidance to a voter as to how to sign and would eliminate voters using shorthand when signing their absentee ballot envelope. In the absence of such an instruction, voters are likely to be deprived of their right to vote inadvertently. Such cannot be the law and should not be permitted to occur.
*525 Conclusion
The Board of Elections’ decision to exclude the ballot which was opened and on which an erasure appeared is upheld. That vote shall not be cast nor counted.
The Board of Elections’ decision to exclude the ballot contained in the unopened envelope based on its determination that the signatures of the voter on the absentee ballot and application and/or registration form do not match is overturned. The envelope shall be opened and the vote shall be cast and counted.
Counsel for the Board of Elections is directed to retrieve the envelope containing the ballot from chambers no later than close of business November 27, 2013 and to make arrangements with counsel to have the envelope opened in the presence of the Board Commissioners (or their designees) and all counsel (and any candidate wishing to attend) at the parties’ earliest convenience but in no event later than a date and time which will afford the Board of Elections sufficient time to certify the election as required by statute. If consensus of the parties or their counsel cannot be reached as to when the envelope will be opened, counsel for the Board shall set the time and date for the opening of the envelope. Notice of the intended opening of the ballot shall be given to counsel for all parties by facsimile no less than one hour prior to the scheduled opening, unless counsel shall waive such notice in writing.
Counsel for the Board of Elections is further directed to retrieve from chambers all other items marked into evidence at the hearing and to retain them in her possession, or at the Board of Elections, unaltered, except for the opening of the envelope, until at least all parties’ rights to appeal this decision and order have expired, or longer, if required by law and/or as is the custom and practice of the Board of Elections.
Counsel for the Board of Elections is further directed to provide a copy of this decision and order to the Chairperson of the New York State Board of Elections by certified mail return receipt requested no later than December 20, 2013 so that the State Board may, as directed herein, review the instructions on absentee ballot applications, absentee ballots and the return envelope provided to voters for the return of absentee ballots to ensure that the instructions to voters on those documents are clear, unambiguous and consistent with prevailing law.
All other prayers for relief are denied.

. The voter’s initials are being used in place of his name.