Medical Supply of NY Corp. v State Farm Mut. Auto. Ins. Co. (2025 NY Slip Op 50412(U))

[*1]

Medical Supply of NY Corp. v State Farm Mut. Auto. Ins. Co.

2025 NY Slip Op 50412(U)

Decided on April 1, 2025

Civil Court Of The City Of New York, Kings County

Roper, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 1, 2025
Civil Court of the City of New York, Kings County

Medical Supply of NY Corp., A/A/O JENNIFER TRINIDAD, Plaintiff(s),

against
State Farm Mutual Automobile Ins. Co., Defendant(s).

Index No. CV- 705575-19/KI

Kopelevich & Feldsherova, P.C., Brooklyn, for Plaintiff
Rossillo Licata LLP, Westbury, for Defendant.

Sandra Elena Roper, J.

Recitation, as required by CPLR §2219(a) of the papers considered in review of this Motion:
Papers
Notice of Motion and Affidavits Annexed 1
Affirmation in Opposition 2
Reply 3
Memoranda of Law 4,5
Upon the foregoing cited papers, pursuant to CPLR §3212 (g), the Decision and Order on Defendant's Motion for Summary Judgment is as follows:
Plaintiff proffered an affidavit, hereinafter referred to as Kuperman Affidavit, as a corroborating exhibit in opposition to Defendant's Motion for Summary Judgment in a No-Fault case. The Kuperman Affidavit was offered to attest that all verification requests were timely responded to in rebuttal upon the shifting of the burden to Plaintiff to establish a triable issue of fact defeating Defendant's judgment as a matter of law. Defendant did not object to the admissibility of the Kuperman Affidavit in its Reply to Plaintiff's opposition. Rather, Defendant exhaustively and substantively argued against the contents and statements contained therein as sworn under oath truths. Defendant exhaustively availed itself of its full and fair opportunity to challenge the Kuperman Affidavit. However, it was at oral argument where Defendant first objected to the Kuperman Affidavit as being defective in form and thus inadmissible. The notarial acknowledgment contained the proper statutory stamp and statutory language dated 4th Day of February 2021 (CPLR 2106 pre — 1/1/2024 Amendment). Defendant argued however, [*2]that the signature line above "Notary Public" written in script clearly and unequivocally failed to bear the notary's signature and rather upon which was written the word "February" (Kuperman Affidavit, Plaintiff's Exhibit A NYSCEF #14). Defendant therefore argued that the Kuperman Affidavit was inadmissible and could not be considered in the decision-making analysis since it was not duly signed with the name of the notary. Plaintiff counsel conducting its oral argument was the named notary public on the notarial stamp. Plaintiff did not argue that Defendant had waived its right to object to the form of the Kuperman Affidavit pursuant to CPLR 2001. Nor did Plaintiff argue that it was a Scrivener's error to be disregarded as a mere technical defect or curable upon application for leave of Court to correct (CPLR 2001; KSP Constr., LLC v LV Prop. Two, LLC, 224 AD3d 58, 60 [1st Dept 2024]). Rather, Plaintiff's counsel countered that the written "February" in and of itself is his written signature. Plaintiff's counsel further stated that he is the attorney at law notary public who signed the Kuperman Affidavit as "February", which is his signature.[FN1]
Succinctly, Plaintiff's counsel as the notary public argues that his signature is whatever he says it is and he is stating that he handwrote in script "February" above the notary public line and it is his signature thereby rendering the Kuperman Affidavit not defective and therefore admissible. This Court therefore ordered memoranda of law, inter alia, on the Question: What is a signature?
 What is a Signature?
The quite ordinary task of signing with a uniquely scripted flourish of an individualized signature [FN2]
, whether for the pleasantries of a thank you note, the solemnity of a Will, or the gravitas of legally binding documents in commerce, is generally taken for granted until consequences of its unlawful reproduction. From its ancient beginnings, methods of individualized personal identification and authentication had taken many forms.[FN3]
However, archeologically the oldest first known signature in the form of a stamped name on a clay tablet [*3]by the signatory [FN4]
was in 3000BC. Although the scripted signature had been in use for centuries, it was legally codified into English law in 1677 by the enactment of the Statute of Frauds, which was also adopted by the American colonies at the time. Thereby mandating enforceable contracts shall be in writing and bear the signature [FN5]
of the party to be legally bound as validation of the obligations contained therein. The signature has been defined as: "1a: the act of signing one's name to something; 1b: the name of a person written with his or her own hand;"[FN6]
"The term signature includes any memorandum, mark or sign, written, printed, stamped, photographed, engraved or otherwise placed upon any instrument or writing with intent to execute or authenticate such instrument or writing." (NY CLS Gen Const § 46). "A signature is made by use of any name, including any trade or assumed name, upon an instrument, or by any word or mark used in lieu of a written signature" (NY CLS UCC § 3-401[2]). Although having its origins in ancient times and still recognized for the untrained, ill, or disabled is the signature by mark, "an indication usually in the presence of witnesses by a distinctive sign or mark (such as an X) of acquiescence in or assent to the content of a document by one unable to write"[FN7]
"The most important feature of a signature is that it reflect the intent of the signatory (People v Rodriguez, 50 Misc 3d 1223[A], 2016 NY Slip Op 50248[U] [Crim Ct, Queens County 2016], citing People v Lo Pinto, 27 AD2d 63 [3d Dept 1966]). To that end, courts have routinely upheld various forms of markings as a valid signature" (id. citing In re Mack's Will, 21 AD2d 205 [3d Dept 1964] [it is immaterial how a person signs his name or adopts his signature); Mohawk Airlines, Inc. v Peach, 81 Misc 2d 211 [Sup Ct, Oneida County 1974] [typewritten initials qualify as a signature]; Brooklyn City R.R. Co. v City of New York, 139 Misc. 691, 248 NYS 196 [1930] [printed, typewritten or lithographed signature held valid so long as adopted as such).
Although the intent of the principal signatory to the substance of the document may be an element as to whether an adopted marking is indeed the signature of the principal signatory, not [*4]so for the notary public. The probing into the intent of the notary public's signature in authenticating the signature of the principal signatory is antithetical to the legislative purpose of the notary public laws. The Notary public laws' legislative purpose is to provide certitude of authentication by a governmental official licensed notary public. Although New York Law states that the notary stamp as the official statement of authority is required to include the name in black ink, it does not specifically state that a notary's signature must be the name of the notary public, nor shall it be as affixed upon its oath of office as filed in the county clerk's office. However, the "American Association of Notaries always recommends using your official, handwritten signature, exactly as it appears on your oath of office."[FN8]
Thus for certitude of authentication as well as for an enhanced fraud deterrent, the notary public's signature, whatever form it may take should be consistent with the signature as affixed upon the oath of office filed with the licensing county clerk's office as an industry standard.[FN9]

"In all the courts within this state the certificate of a notary public, over the signature of the notary public, shall be received as presumptive evidence of the facts contained in such certificate; provided, that any person interested as a party to a suit may contradict, by other evidence, the certificate of a notary public" (NY CLS Exec § 137). "A notary public who is duly licensed as an attorney and counsellor at law in this state may substitute the words 'Attorney and Counsellor at Law' for the words 'Notary Public'"[FN10]
(id.; see NY CLS Exec § 135). Further,
"The notary public's electronic signature is deemed to be reliable if the standards which have been approved through regulation by the secretary of state have been met. Such regulations shall include, but not be limited to, the requirements that such electronic signature be: (i) unique to the notary public; (ii) capable of independent verification; (iii) retained under the notary public's sole control; (iv) attached to the electronic record; and (v) linked to the data in such a manner that any subsequent alterations to the underlying document are detectable and may invalidate the electronic notarial act. " 
(NY CLS Exec § 135-c 5 [b]). Although not specifically defined within the statutory language, it may be deduced that the notary's signature is required to be unique, capable of independent [*5]verification and not an easily alterable nor reproducible representation yet consistent with the signature affixed upon the oath of office provided to the licensing County Clerk in which "notary public's certificate of official character is filed" (NY CLS Exec § 137).
In this instant matter, Plaintiff counsel's argument that his signature is whatever he says it is, is indeed consistent with statutory and case law for the lay person principal signatory, although such inconsistency may be problematic in personal transactions. Not so, for Plaintiff counsel's signature as the notary public of the Kuperman Affidavit. His notary public signature cannot be fungible from one moment in time to another nor from one document to another. Rather, it must be reliably consistent with his unique, capable of independent verification and not easily alterable nor reproducible signature as affixed to his notarial oath of office filed in the Richmond County Clerk's Office, pursuant to the legislative intent, purpose and the industry standards (Plaintiff's Exhibit A, NYSCEF document #14). Of note, Plaintiff counsel as the notary public is also the attorney signatory to the Statement of Authorization for Electronic Filing of which his signature affixed thereto is not "February" (NYSCEF document #15). Nevertheless, Plaintiff counsel's claim at oral argument that "February" as affixed in the Kuperman Affidavit is his signature is herein credited.[FN11]
Nevertheless, based upon the totality of the circumstances herein, This Court irrefutably finds that "February" is not his non-fungible notarial signature affixed to his notarial oath of office filed in the Richmond County Clerk's Office. Therefore, This Court finds that the Kuperman Affidavit is defective in form for the failure of the notary public to have affixed his signature consistent with his signature that is affixed to his oath of office filed in the Richmond County Clerk's Office.
Nevertheless, such a defect in form is not fatal and may be rehabilitated within the discretion of the court. It has been held that where the notarial signature was omitted from a document it is considered a technical defect, where the defect is not jurisdictional in nature and where there is no undue nor substantial prejudice to a substantial right, then said defect may be disregarded or curable by subsequent affidavit: "Contrary to the defendants' contention, the Supreme Court properly considered the expert affidavit submitted by the plaintiffs on that issue, since the notary's failure to sign the jurat was a technical defect which could be disregarded in the absence of substantial prejudice to the defendants" (see CPLR 2001; Carter v Grenadier Realty, 83 AD3d 640, 642 [2d Dept 2011]) citing Baluchinsky v General Motors Corp., 248 AD2d 574, 575, 670 NYS2d 536 [1998]; Supreme Automotive Mfg. Corp. v Continental Cas. Co., 97 AD2d 700, 700, 468 NYS2d 125 [1983]). "[T]he court disregarded Ms. Kim's affidavit because of two technical defects: (1) the notary's signature on the affidavit was illegible; and (2) there is no indication what date in April 1998 the document was notarized" (Seoulbank, NY Agency v D&J Export & Import Corp., 270 AD2d 193, 194 [1st Dept 2000]) citing Baluchinsky v GMC, 248 AD2d 574, 575 [2d Dept 1998]; Supreme Auto. Mfg. Corp. v Cont. Cas. Co., 97 AD2d 700 [1st Dept 1983]; see also, Pasqualini v Tedesco, 248 AD2d 604 [2d Dept 1998]; Lane Crawford Jewelry Ctr. v Han, 222 AD2d 214 [1st Dept 1995]). "Given the lack of prejudice to a substantial right of the defendant, the Supreme Court should have disregarded the defect in the affidavit of the plaintiff's expert and should have considered the affidavit in opposition to the defendant's motion (see, CPLR 2001; Baluchinsky at 575, citing Supreme Automotive; see also, [*6]Lauer v Rapp, 190 AD2d 778 [2d Dept 1993]). "[T]he single defect in the search warrant application is that the jurat was not signed. The jurat is, however, 'simply evidence of the fact that the oath was properly taken before a duly authorized officer. It is no part of the oath', and its absence is a defect curable by subsequent affidavits or testimony" (People v Zimmer, 112 AD2d 500, 501 [3d Dept 1985], citing People ex rel. Fifth Ave. & 37th St. Corp. v Miller, 261 AD 550 [1st Dept 1941]; see, Supreme Automotive Mfg. Corp. v Continental Cas. Co., 97 AD2d 700). "We reject plaintiff's contention that Supreme Court erred in permitting defendant owners to correct, in reply, the defects in Kellam's original affidavit neither signed nor notarized; however, defendant owners submitted a signed and notarized affidavit from Kellam in reply" (KSP Constr., LLC v LV Prop. Two, LLC, 224 AD3d 58, 66-67 [1st Dept 2024]). "The notary's failure to sign the investigator's affidavit is the type of defect which a court may permit to be corrected upon such terms as are just or, if a substantial right of a party is not prejudiced, disregard" (CPLR 2001; Supreme Automotive at 700 citing People ex rel. Fifth Ave. & 37th St. Corp. at 553-554). Herein, Defendant duly availed itself of the opportunity to full and fair exhaustive challenge to the Kuperman Affidavit in its Reply yet failed to object as to its inadmissibility in its form of notarization and therefore it cannot be found that Defendant is unduly prejudiced by its consideration. Moreover, it is found that Defendant has not been deprived of a substantial right and therefore further not prejudiced, such that this defect in the notarial signature is held as disregarded. Further, Defendant waived its right to object to the defect in form pursuant to CPLR § 2001. The Kuperman Affidavit is hereby ruled admissible and is being considered. Defendants have satisfied its burden for judgment as a matter of law. However, upon the shifting of the burden, Plaintiff has satisfied its burden in rebuttal establishing a scintilla of a triable issue of fact as to the Outstanding Verification Requests.
For the foregoing reasons, the answer to the Question as to what is a signature? A signature is whatever the signatory says it is. However, a notarial signature must be consistent with the signature affixed upon the oath of office filed with the licensing county clerk's office. 
Defendant's Motion for Summary Judgment is Granted to the extent that Defendant has been found to have timely issued its Denials and the triable issue of fact is the Outstanding Verification Requests.
This Constitutes the Decision and Order of This Honorable Court.
Date: April 1, 2025
Brooklyn, New York
Hon. Sandra Elena Roper
Judge of the Civil Court

Footnotes

Footnote 1:"Plaintiff's counsel responded, asserting that the notary public in question—who was also Plaintiff's counsel—could confirm that the signature of the notary was authentic and is that of plaintiff's counsel, even if it was not in the form of a full legal name. Plaintiff's counsel argued that a notary's signature need not be the notary's full legal name, but rather any mark or representation that the notary can confirm as their signature" (Plaintiff's Memorandum of Law, NYSCEF document #17).

Footnote 2:"Though individuality and legibility seem as if they ought to be essential traits of a signature, that's never really been the case. Starting in the 9th and 10th centuries, scribes validated documents using the sign of the cross. This practice may account for the custom among illiterates of signing an "x" in place of their name. By contrast, among the literate gentility, a signature was not meant to be easily discerned—an intricate and illegible signature, rather than a printed one, suggested an education in handwriting" (Julia Fesenthal, Slate, Give me Your John Hancock 
https://slate.com/news-and-politics/2011/03/when-did-we-start-signing-our-names-to-authenticate-documents.html 
[March 18, 2011]).

Footnote 3:See n 2, supra.

Footnote 4:The Guardian, "Whose Scribble is that"

https://www.theguardian.com/australia-news/2023/sep/08/celebrity-famous-person-signatures-quiz#:~:text=Some%20time%20around%203000BC%20a%20Sumerian%20scribe,contracts%2C%20replacing%20the%20seal%20or%20the%20X 
(March 8, 2023).

Footnote 5:"In ecclesiastical law. The name of a sort of rescript, without seal, containing the supplication, the signature of the pope or his delegate, and the grant of a pardon. In contracts. The act of writing one's name upon a deed, note, contract, or other instrument, either to identify or authenticate it, or to give it validity as one's own act. The name so written is also called a "signature" (The Law Dictionary, Signature 
https://thelawdictionary.org/signature/#:~:text=The%20act%20of%20writing%20one's,Signatory).

Footnote 6:Merriam-Webster, Signature: Legal Definition 
https://www.merriam-webster.com/dictionary/signature#:~:text=na%C2%B7%E2%80%8Bture-,1,or%20her%20wishes%20or%20intentions.

Footnote 7:Merriam-Webster, signature by mark 
https://www.merriam-webster.com/dictionary/signature%20by%20mark.

Footnote 8:Robert T. Koehler, American Association of Notaries, Can a Notary Use a Signature Stamp to Notarize Documents? 
https://www.notarypublicstamps.com/articles/can-a-notary-use-a-signature-stamp-to-notarize-documents#:~:text=If%20you%20are%20a%20notary,a%20handwritten%20or%20wet%20signature [September 29, 2019].

Footnote 9:See n 8, supra.

Footnote 10:The second question presented: Whether an attorney who is a notary admitted in the State of New York is held to a different standard pertaining to a signature than a non-attorney notary. "No" is the response agreed upon by Plaintiff and Defendant. However, unlike lay-person notary publics, attorney at law notary publics are held to a higher ethical standard. Anecdotally, in the practice of law in avoidance of allegations of legal malpractice or professional misconduct for ethical lapses, it is cautioned that counselors at law by virtue of their heightened ethical oath of office should be wary of notarization of legal documents that they did not draft themselves, particularly wills, deeds contracts and powers of attorney.

Footnote 11:Parenthetically, similarly to judges, certain public figures and professions, such as in the arts, choose a personal signature and a public signature.